ALUMINUM COMPANY OF AMERICA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41037.   Filed October 29, 1954.

*Paul G. Rodewald, Esq.*, and *Carl Cherin, Esq.*, for the petitioner.
*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner has determined that the petitioner owes $2,692.05 of excess profits on a Navy contract under section 3 of chapter 95 of the Act of March 27, 1934, the Vinson Act, as amended, 48 Stat. 503,505. The jurisdiction of this Court arises by reason of provisions in the Vinson Act making all provisions of law

applicable with respect to taxes applicable to the assessment, collection, or payment of amounts due under the Vinson Act. The facts have been submitted by a stipulation which is adopted as the findings of fact. The only question for decision is whether subcontracts entered into by the petitioner in 1946 are subject to the profit-limiting provisions of the Vinson Act.

The Vinson Act authorized new naval construction to bring the United States Navy up to the strength permitted under prior agreements with foreign powers. H. Rept. No. 338, 73d Cong., 2d Sess. The purpose of section 3 of that act was to limit the profits that might be made from the anticipated construction by contractors and subcontractors. H. Rept. No. 1024, 73d Cong., 2d Sess., p. 5; 78 Cong. Rec. 5174 (1934). Section 3 provided "that no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel or aircraft, or any portion thereof, herein, heretofore, or hereafter authorized unless the contractor agrees" to various conditions set forth in subparagraphs (a) through (e). Only (b) and (e) need be mentioned here. Subparagraph (b) required that the prime contractor would agree to pay into the Treasury all of his profits in excess of a certain per cent on contracts covered by the section which were completed by the particular contracting party within any income taxable year. Subparagraph (e) required that the prime contractor would agree "to make no subcontract unless the subcontractor agrees to the foregoing conditions." Section 401 of the Second Revenue Act of 1940 provided that the portions of section 3 of the Vinson Act, to which reference has been made, "shall not apply to contracts or subcontracts * * * which are entered into in any taxable year to which the excess profits tax provided in subchapter E of Chapter 2 of the Internal Revenue Code is applicable * * * ." Congress felt that the special provisions of the Vinson Act should not apply while the excess profits tax, applying to all corporations, was in effect. H. Rept. No. 2894, 76th Cong., 3d Sess., p. 15, 1940-2 C. B. 496, 507.

Pratt & Whitney Aircraft Division of United Aircraft Corporation entered into a prime contract with the Government of the United States on February 8, 1945, for the manufacture of aircraft engines for naval aircraft. Subchapter E of chapter 2 of the Internal Revenue Code was then in effect but was repealed by section 122 (a) of the Revenue Act of 1945 with respect to taxable years beginning after December 31, 1945. The petitioner entered into certain subcontracts in 1946 under the prime contract just mentioned and completed them in that year.

The petitioner argues that the subcontracts here in question are not subject to section 3 of the Vinson Act under the wording of that

section and under long-standing regulations and prior rulings with respect to section 3 and other similar statutory provisions. The respondent contends that section 401 of the Second Revenue Act of 1940 suspended the profit-limiting provisions of the Vinson Act on contracts and subcontracts only while the excess profits tax was in effect; the excess profits tax had been repealed before the subcontracts here in question were entered into; and, therefore, the profit-limiting provisions of the Vinson Act apply to these subcontracts.

Section 401 of the Second Revenue Act of 1940, upon which the Commissioner relies, imposed no limitation on the profits of a contractor or a subcontractor. Its only effect, so far as this case is concerned, was to render inoperative the profit-limiting provisions of the Vinson Act while the excess profits tax was in effect, with the result that the prime contract was entered into at a time when section 3 of the Vinson Act did not apply. The only authority which the Government has for collecting excess profits from this petitioner is in the Vinson Act, as amended. It is reasonably clear from the words of section 3 of the Vinson Act that it applies and was intended to apply only to subcontracts under a prime contract to which it also applies. That section and similar provisions in the Act of June 28, 1940, 54 Stat. 676, have been interpreted as applying only to subcontracts made with respect to a prime contract to which the same Act applied. Sec. 17.3, T. D. 4906, 1939-2 C. B. 404, 408; art. 2, T. D. 4723, 1937-1 C. B. 519, 521; sec. 16.2, T. D. 4909, 1939-2 C. B. 422, 425; I. T. 3394, 1940-2 C. B. 394, insofar as it relates to section 2 (b) of the Act of June 28, 1940; sec. 26.1, T. D. 5000, 1940-2 C. B. 397, 400. Had Congress intended a different result, it would have expressly provided for it as it did in section 3 of the Act of June 28, 1940, where it stated the Act should apply to "contracts or subcontracts entered into after the date of approval of this Act." See I. T. 3394, *supra*, insofar as it relates to section 3 of the Act of June 28, 1940.

The applicability of the Vinson Act to the petitioner as a subcontractor therefore depends upon whether it applies to the prime contract. The Commissioner makes no argument that it applies to the prime contract and clearly it does not. This is so despite the fact that the profits of the prime contractor under that contract for its taxable years beginning after December 31, 1945, were not subject to excess profits tax. Congress realized, when it enacted section 401, that contracts to which that section would apply but which would be completed after the repeal of the excess profits tax would not be subject to the Vinson Act. S. Rept. No. 2114, 76th Cong., 3d Sess., 1940-2 C. B. 528, 544. There was no obligation on the prime contractor, at the time it entered into these subcontracts with the petitioner, to require the petitioner, as subcontractor, to agree to the

requirements of section 3 of the Vinson Act, and section 3 of the Vinson Act imposes no obligation upon the petitioner as a subcontractor to repay any portion of its profits from those subcontracts.

*Decision will be entered under Rule 50.*